## SUPREME COURT.

### IN THE MATTER OF J. H. MORRISON.

A PARTY respondent, kept in custody under process of attachment for non-
compliance with the final decree of the Court, sitting as a Court of Chan-
cery, prayed to be discharged, alleging want of funds, and that he had
remitted a large amount, subsequent to the filing of the bill, to his kindred
in a foreign country.

Held, that a contingent liability having arisen against the respondent by the
institution of the suit, it was his duty to have kept his property in the King-
dom to enable him to meet whatever judgment might be awarded. Petition
dimissed.

ALLEN, C. J.

It appears that the petitioner is held in custody by virtue of
an attachment, issued by this Court, because he failed to obey
the final decree of said Court, sitting as a Court of Chancery,
in the case of K. Kaapakea *et al.*, against him, whereby he was
ordered to pay the plaintiffs the sum of twenty-five hundred
and sixty dollars.

This decree was made upon a complaint of the plaintiffs, in
which they allege fraud on the part of the defendant, the
present petitioner, in the purchase of a tract of land, and prays
that the defendant may be compelled to pay them the money
which he has received from sales which he has made prior to
filing of said complaint; and to reconvey to them that portion
of the land which he has not conveyed to innocent purchasers,
without notice.

An injunction was made at the time process was issued on
said complaint, forbidding him from making sales, or commit-
ting trespass thereon. The foregoing amount is what the

J. H. Morrison.

defendant has received from the sales of the land, less the amount of the purchase money paid by him.

And now the petitioner prays to be discharged from said arrest, because he says that he is unable to comply with the decree. He alleges that he has disposed of the money which he received from the sale of the land by paying a debt to his father, who resides in Pennsylvania, to the amount of ten hundred and sixty dollars; that he also remitted him four hundred and fifty dollars for the benefit of his sister; and that at another time, and subsequent to the service of the bill in equity, under which the final decree of this Court was issued, "he remitted to his father the further sum of fifteen hundred dollars as a contribution towards the support of himself and daughter, and as some solace in his declining years." He further represents that he is informed and verily believes that his father is unable to return any portion of the amount remitted him.

It is contended by the counsel for the complainants in the bill, and in whose favor the decree was made, that the Court has not power to vacate the attachment; that having been once issued it is beyond reconsideration and recall. The Court does not regard this as a sound legal view of this process. The decree was made by the Court, and notice given to the defendant to comply with it, which he failed to do; the complainants by one of their counsel present a petition, in which he alleges, on oath, that he is advised and believes that the said petitioner does not intend to comply with that portion of the decree which requires him to pay money which he has received from the sales of the land, namely, the sum of twenty-five hundred and sixty dollars; and further, he is advised and believes that the defendant has made such disposition of the money as in the opinion of said petitioner will prevent the plaintiffs from obtaining said money. Whereupon a process of attachment was issued ordering the Marshal to keep him in custody till he had complied with the final decree made in said cause, or be discharged by order of Court.

This process does not preclude the party from coming into Court and procuring his discharge, if the allegations upon which the party was arrested proved to be untrue. And the question becomes a very simple one, both in law and morals: has the

petitioner made a wrongful disposition of said money which will preclude the plaintiffs from obtaining the amount decreed, or any portion of it? He alleges that he has given fifteen hundred dollars to his father, after the service of the complainant's bill upon him, "and he is informed and verily believes that his father is quite unable to return any portion of the amount so remitted him," and that "he, the petitioner, is absolutely destitute of means wherewith to pay any part of the amount decreed against him."

The Court cannot relieve a party who seeks to avoid the payment of his debts or liabilities, either by transferring his property to a third party, or of removing the same out of the jurisdiction of the Court. The principles of law, of equity, and the provisions of our Civil Code give this protection to creditors, and the question arises, what is the evidence that he intended to evade the payment of the amount awarded by the decree? It is admitted that the bill was filed; that the claim was asserted before he sent to his father the last amount of fifteen hundred dollars. He was then aware that at least a contingent liability was upon him, and it was his duty to have kept his property in the Kingdom, or at least under his control, to enable him to meet whatever judgment might be awarded against him. Had this money been used in the ordinary course of business, it would have presented a different case. But it would be a perfect dereliction of duty in a Court, to justify men in sending their money or other property out of its jurisdiction, and thereby evading their liabilities within it. It seems somewhat singular to me that counsel can seriously address a Court, and ask for a discharge on the ground that the party has given his money to his kindred in a distant country. The laws of this Kingdom must be enforced, and the rights of its citizens secured, or the administration of justice is a mockery. Had the petitioner disposed of this money before he was aware that claims were instituted, or would be instituted against him, or had he lost the money in the regular course of business by misfortune, or should tender security for this amount, it would present a very different case. But when the claim was asserted and the bill filed in Court, how can he justify himself for sending beyond the jurisdiction of the Court all the means he had

J. H. Morrison.

to respond to the decree which might be given against him—and especially the very money which this suit was instituted to re-claim. If security for this amount was tendered it would present a very different case—but as it now stands on the present hearing, on the statements of the petitioner himself, and his counsel, it is a claim for a release from arrest because he is unable to pay, when that inability is created by the remittance of money as a present to his kindred in a distant country. Can donations be made and liabilities repudiated ? The law teaches a different doctrine.

It is further contended by the counsel for the petitioner, that the injunction was issued, forbidding him to make sales of the land, or committing trespass thereon—but as he was not enjoined from sending the money which he had received from the sales of the land, out of the jurisdiction of the Court, he should be excused for doing it. ·This would be a new application of the writ of injunction—of its force, when referring to money in hand, there would be much question. It has a decided force when its object is to prevent the sale of land, or trespass thereon.

The bill gave full notice of the claim, and it seems somewhat singular to require a writ of injunction to notify persons against whom suits are pending, not to send their money out of the jurisdiction of the Court, or they will be excused from so doing. The books furnish no such precedent, and it will hardly commend itself to the common sense or common honesty of mankind. Petition dismissed.

Mr. Montgomery for petitioner.
Mr. Bates for respondent.
September 6, 1860.